UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
NOV 29 2017
CLERK



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ZACHARY ZIEGLER,<br><br>Defendant. | 3:17-CR-30074-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENT |

Zachary Ziegler is charged with killing a man he came face to face with, in a sudden quarrel and heat of passion, by striking and beating him. He seeks to suppress his warned statements while still in custody after being arrested the day before and asking for a lawyer. Because the statements were procured in violation of Ziegler's right to counsel but were nonetheless made voluntarily, the suppression motion should be granted in part and denied in part.

## BACKGROUND

On May 23, 2017, BIA Officer Michael Carlow, III responded to a call that there was a male who was not breathing at Lisa Walking Bull's residence in the East Housing area of Fort Thompson, South Dakota. When Carlow arrived, he found Thomas Witt laying on the living room floor of the residence blue and unconscious. Carlow

performed CPR on Witt until an ambulance came and EMTs took over. The EMTs transported Witt to the Sanford Chamberlain Hospital where he was pronounced dead.

In the meantime, Officer Carlow began interviewing witnesses in an attempt to find out what happened. Carlow was told that Witt was involved in a fight in the front yard of Walking Bull's home with another male and was given three names of who the male might be. Ziegler was one of them. The other two were his brothers, Zane and Jonathan Ziegler. Carlow was also told that the person Witt fought with may have left in a silver car.

At some point, BIA Officer Derek Parish, who was now on the scene, observed a silver car approaching Walking Bull's house. Parish signaled for the driver of the vehicle – Ziegler – to stop, and he did. Officer Carlow informed Ziegler that the officers were investigating an assault that took place at the home and that his name was mentioned as someone who was involved.

Following the stop, Ziegler was handcuffed and placed in the rear seat of Officer Parish's patrol vehicle. There Ziegler was asked if he knew anything about the fight at Walking Bull's residence. He answered in the negative. In an ensuing question, Ziegler was asked if he had gotten into a fight at the residence. He stated he did not and then said, "I can't even talk to you guys without a lawyer."[1] Afterward, Ziegler was probed

---

[1] Mot. Hrg. Ex. 1 at 1:16:50-59 (Carlow recording) (November 8, 2017).

about how much and what he had drank that day, given a preliminary breath test, arrested for DUI, and taken to the Lower Brule Jail where he was incarcerated.

The next afternoon, Charles Richardson, an FBI special agent, interviewed Ziegler at the jail. Before doing so, Officer Carlow informed Richardson that Ziegler had been arrested the preceding day for a DUI offense and had requested an attorney. Richardson assumed that Ziegler's request pertained to the DUI offense and went ahead and Mirandized Ziegler. Ziegler signed a waiver of his rights and agreed to speak with Richardson about the incident with Witt. At first, Ziegler was forthcoming with information, downplaying what he did and making it known that he was intoxicated when the altercation took place. Halfway into the interview, Richardson told Ziegler that Witt had died. Ziegler almost immediately became upset, started crying, and kept saying, "No."[2] This went on for a couple of minutes until Ziegler said to Richardson, "That's, I'm a murderer?"[3] Richardson suggested that they discontinue the interview and revisit the matter at a later time. Ziegler agreed and stated, "I think I need a lawyer."[4]

Originally, Ziegler was charged, by federal Criminal Complaint, with voluntary manslaughter and ultimately indicted on the same offense. Following his arraignment

---

[2] Mot. Hrg. Ex. 2 at 6-7.

[3] *Id.* at 7.

[4] *Id.* at 8.

3

and not guilty plea, he moved to suppress the statements he made to Agent Richardson. The Court held an evidentiary hearing on the Motion, heard testimony (from Officer Carlow and Richardson), and received two exhibits into evidence (recordings made of the scene and of Richardson's interview with Ziegler).

## DISCUSSION

Ziegler claims that Agent Richardson violated the tenets of *Miranda* when he initiated further questioning after Ziegler had indicated that he did not want to make a statement without a lawyer. Ziegler argues that this violation requires the suppression of his statements to Richardson as both substantive and impeachment evidence.

**A. *Miranda* Violation**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."[5] In *Miranda v. Arizona*,[6] the Supreme Court adopted a set of prophylactic rules to protect a suspect's Fifth Amendment right from the "inherently compelling pressures" of custodial interrogation.[7] The Court observed that "incommunicado interrogation" in an "unfamiliar," "police-dominated atmosphere,"[8] involves trenchant strain "which work[s] to undermine the [suspect's]

---

[5]*U.S. Const. amend. V.*

[6]384 U.S. 436 (1966).

[7]*Id.* at 467.

[8]*Id.* at 456-57.

4

will to resist and to compel him to speak where he would not otherwise do so freely."[9] So, it reasoned, "unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the [suspect] can truly be the product of his free choice."[10]

To counteract these intimidating forces, the *Miranda* Court held that the police must advise a suspect of his right to counsel and, "[i]f [the suspect] states that he wants an attorney, the interrogation must cease until an attorney is present."[11] The suspect can waive his right to counsel,[12] but the waiver must be a "knowing, intelligent, and voluntary one under the 'high standar[d] of proof'" used for waiving constitutional rights.[13]

Several years later, in *Edwards v. Arizona*,[14] the Supreme Court determined that the traditional standard for waiver was not sufficient to protect a suspect's right to have counsel with him during an interrogation if he had previously requested counsel; "additional safeguards" were needed.[15] The Court therefore superimposed a "second

---

[9]*Id.* at 467.

[10]*Id.* at 458.

[11]*Id.* at 474.

[12]*See id.* at 475.

[13]*Maryland v. Shatzer*, 559 U.S. 98, 104 (2010) (*quoting Miranda*, 384 U.S. at 475).

[14]451 U.S. 477 (1981).

[15]*Shatzer*, 559 U.S. at 104 (*quoting Edwards*, 451 U.S. at 484).

layer of prophylaxis."[16] Thus, when the suspect has invoked his right to have counsel present during custodial interrogation, he does not waive that right by merely responding to further police-initiated interrogation after being advised of his *Miranda* rights.[17] Having expressed his desire to deal with the police only through counsel, the suspect may not be interrogated by them until counsel has been made available to him, unless he "initiates further communication, exchanges or conversations with the police."[18]

The rationale for creating this additional layer is that once a suspect indicates that he is incapable of or does not want to undergo custodial questioning without the assistance of counsel, any subsequent waiver that has come at the behest of the police, and not the suspect, is itself the product of coercion and not the suspect's "purely voluntary choice."[19] Under the *Edwards* rule, a voluntary *Miranda* waiver is sufficient if made at the time of an initial attempted interrogation but is not enough if it is made in conjunction with a later attempted interrogation when the suspect has requested access to counsel. The presumption of involuntariness – an important facet of the rule –

---

[16]*Shatzer*, 559 U.S. at 104 (*quoting McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991)).

[17]*See Edwards*, 451 U.S. at 484.

[18]*Id.* at 484-85.

[19]*Arizona v. Roberson*, 486 U.S. 675, 681 (1988).

ensures that the police will not engage in "badgering or overreaching – explicit or subtle, deliberate, or unintentional."[20]

Two elements must be examined in deciding whether the police have obtained a statement in violation of *Edwards'* "rigid" prophylactic rule.[21] A court must "determine whether [the suspect] actually invoked his right to counsel."[22] If he did, then the court must ascertain who initiated the succeeding conversation that yielded the challenged statements.[23] If the suspect, after invoking his right to counsel, did not "initiate[ ] further discussions with the police" or "knowingly and intelligently waive[ ] the right he had invoked," then the police-elicited statements are inadmissible in the government's case at trial.[24]

The record is clear, and the Government makes no contrary assertion, that Agent Richardson – not Ziegler – initiated the May 24 interview. Richardson went to and met with Ziegler in a conference room at the Lower Brule Jail. Ziegler never requested to see or to talk to Richardson and the impetus to meet did not come from Ziegler. At the time, Richardson knew that Ziegler had been in tribal custody since being arrested for a

---

[20]*Smith v. Illinois*, 469 U.S. 91, 98 (1984).

[21]*Id.* at 95.

[22]*Id.*

[23]*See id.*

[24]*Id.*

7

DUI and had asked for an attorney when questioned the day before. Finding that Richardson initiated the jail interview of his own volition and not in response to anything Ziegler said or did, the Court must now decide if Ziegler invoked his right to counsel.

To do so, a suspect must make an unambiguous request for an attorney.[25] *Edwards*, as already explained, created a "bright-line rule that *all* questioning must cease" when the suspect asserts his right to counsel.[26] If the police initiate subsequent questioning, then any statement the suspect makes is presumed involuntary and is excludable.[27]

Officer Carlow took Ziegler's statement to be a request for a lawyer.[28] Carlow advised Agent Richardson of the request but Richardson believed that it only related to the DUI charge Ziegler had been arrested for.[29] Richardson never asked for clarification and assumed he could interview Ziegler after *Miranda* warnings had been given and

---

[25]*See Berghuis v. Thompson*, 560 U.S. 370, 381 (2010); *Davis v. United States*, 512 U.S. 452, 461-62 (1994).

[26]*Smith*, 469 U.S. at 98.

[27]*See id.* at 95.

[28]*See* Mot. Hrg. Tr. 24-25, 31, 39, 49-51 (Nov. 8, 2017); Mot. Hrg. Ex. 1 at 1:45:49-51 (Carlow recording).

[29]*See* Mot. Hrg. Tr. 31, 62, 68-70.

8

waived, because Ziegler's earlier right to counsel invocation did not prevent inquiries into the melee with Witt.[30]

Ziegler's statement was not confusing or unclear. He unambiguously indicated that he would not talk to Officers Carlow and Parish without a lawyer.[31] Tellingly, Carlow, who was present, interpreted the statement to be a request for counsel and advised Agent Richardson of the request well before the interrogation at the jail. Regardless, the statement was more *un*equivocal than those statements that courts have found triggered *Edwards'* rule.[32]

---

[30]*See id.* at 68-70, 74-77.

[31]*See Roberson*, 486 U.S. at 683 (suspect's statement that he "wanted a lawyer before answering any questions"); *Oregon v. Bradshaw*, 462 U.S. 1039, 1041-42 (1983) ("I do want an attorney before it goes much further."); *Edwards*, 451 U.S. 479 ("I want an attorney before making a deal.").

[32]*See e.g. Smith*, 469 U.S. at 93, 99-100 (finding *Edwards* sprung where the suspect responded to whether he understood that he had a right to counsel, "Uh, yeah, I'd like to do that."); *Sessoms v. Grounds*, 776 F.3d 615, 626-27 (9th Cir.) ("There wouldn't be any possible way that I could have a – a lawyer present while we do this?"), *cert. denied*, 136 S.Ct. 80 (2015); *United States v. Hunter*, 708 F.3d 938, 943-47 (7th Cir. 2013) ("Can you call my attorney?"); *Wood v. Ercole*, 644 F.3d 83, 91-92 (2d Cir. 2011) ("I think I should get a lawyer."); *Abela v. Martin*, 380 F.3d 915, 919, 926-27 (6th Cir. 2004) ("[M]aybe I should speak with an attorney by the name of William Evans" and proffering Evans' business card); *Cannady v. Dugger*, 931 F.2d 752, 755 (11th Cir. 1991) ("I think I should call my lawyer."); *United States v. Smith*, No. CR. 07-30097, 2008 WL 650450 at **4-5 (D.S.D. Feb. 15, 2008) ("Can I get a lawyer here?"); *State v. Edler*, 350 Wis.2d 1, 18-20, 833 N.W.2d 564, 573 (2013) ("Can my attorney be present for this?"); *Carter v. State*, 299 P.3d 367, 370-71 (Nev. 2013) ("Can I get an attorney?"); *Ballard v. State*, 420 Md. 480, 491-94, 24 A.3d 96, 102-04 (2011) ("Do you mind if I not say no more and just talk to an attorney about this?"); *Wheeler v. State*, 289 Ga. 537, 539-40, 713 S.E.2d 393, 394-96 (2011) ("I need to discuss it with a lawyer before I . . . talk to you."); *Carr v. State*, 934 N.E.2d 1096, 1105-06 (Ind. 2010) ("I really need an attorney to . . . talk with" and "I need to have an attorney

(continued...)

The fact that Agent Richardson questioned Ziegler about a separate offense after *Miranda* warnings were given and waived, did not relieve Richardson of his legal duty to provide Ziegler counsel. Richardson was fully cognizant of the counsel request and his failure to give credence to that request cannot be justified under the circumstances. Two Supreme Court cases make this perspicuous.

The first is *Arizona v. Roberson*,[33] in which the Court declared that a suspect who invokes his right to counsel is also protected from subsequent questioning about another unrelated offense. In *Roberson*, the suspect was arrested on suspicion of burglary and requested an attorney before answering questions.[34] Three days later, while still in custody, different officers read the suspect his *Miranda* rights, proceeded to

---

to deal with because this is a serious thing."); *State v. Chavarria-Cruz*, 784 N.W.2d 355, 359-60, 365 (Minn. 2010) ("I'm cooperating here, talking to you has been like you know, I think I need a lawyer. . . ." or "I'm cooperating here, if I could just be like, you know, get me a lawyer."); *State v. Bell*, 958 So.2d 1173, 1174-75 (La. 2007) ("I'd rather wait until my mom get me a lawyer then."); *People v. Bradshaw*, 156 P.3d 452, 456-58, (Colo. 2007) ("I'm going to have to talk to an attorney about this."); *see also and compare with Davis*, 512 U.S. at 462 (holding that the phrase "maybe I should talk to a lawyer" was not a request for counsel); *United States v. Mohr*, 772 F.3d 1143, 1145-46 (8th Cir. 2014) (defendant's statements, "Should I get a lawyer at this time? . . . I think I should get one." and "I want my lawyer. . . . [I]f you want this recorded, I want a lawyer present." were ambiguous and not sufficient to invoke right to counsel), *cert. denied*, 135 S.Ct. 1727 (2015).

[33] 486 U.S. 675.

[34] *See id.* at 678.

interrogate him, and secured an incriminating statement about a second, unrelated offense.[35]

The *Roberson* Court held that "[a]s a matter of law, the presumption raised by a suspect's request for counsel – that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance – does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation."[36] The takeaway from *Roberson* is that "whether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second interrogation," the police have an obligation to provide the suspect with counsel once it has been requested.[37]

The second case is *Minnick v. Mississippi*.[38] There a suspect requested an attorney during an interview with the FBI.[39] The interview then ceased and an appointed attorney met with the suspect on two or three occasions.[40] Three days afterward,

---

[35]*See id.*

[36]*Id.* at 683.

[37]*Id.* at 687-88.

[38]498 U.S. 146 (1990).

[39]*See id.* at 148-49.

[40]*See id.* at 149.

11

county sheriffs questioned the suspect without his attorney present.[41] The Supreme Court held that the involvement of separate law enforcement officials did not circumvent the suspect's right to counsel.[42] The Court stated that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not [the suspect] has consulted with his attorney."[43]

A straight forward application of these cases and *Edwards* leads inescapably to the conclusion that Ziegler's *Miranda* right to counsel was breached. He was interrogated within 24 hours of his request for counsel without any intervening break in custody. Agent Richardson knew ahead of time of the request. It is of no consequence that the interrogation concerned a different offense and was undertaken by another law enforcement agency. Even though he was given *Miranda* warnings and waived them, Ziegler did not initiate the contact with Richardson. Ziegler's dishonored invocation of his right to counsel vitiates his later decision to talk without having counsel present.[44]

---

[41]*See id.*

[42]*See id.* at 153-54.

[43]*Id.* at 153.

[44]*See United States v. Lucas*, 963 F.2d 243, 246-47 (9th Cir. 1992); *United States v. Ezell*, No. 8:09CR137, 2009 WL 3063035 at **5-6 (D. Neb. Sept. 18, 2009); *see also United States v. Arrington*, 215 F.3d 855, 856 (8th Cir. 2000) (after person in custody expressed desire to deal with police only through counsel, he may not be interrogated until counsel made available to him unless he initiates further contact; this rule applies whether contemplated reinterrogation concerns the same or different offense, or

(continued...)

12

Hence, Ziegler's suppression motion should be granted – at least to the extent it seeks to exclude his statements to Richardson from being used in the Government's case-in-chief at trial.

**B. Impeachment**

Having determined that the Government may not use the statements Ziegler made to Agent Richardson at trial before it rests, there is left to be decided whether these statements are admissible for impeachment purposes.

Although statements taken in violation of the prophylactic *Miranda* rules cannot be used as substantive evidence, they may nonetheless be admissible to impeach the conflicting testimony of a defendant.[45] The prosecution cannot convict the defendant based on evidence acquired in disregard of constitutional guarantees and their respective judicially created protections. But the use of statements so gained to impeach prior inconsistent testimony is a different story. If the defendant chooses to testify on

---

whether the same or different law enforcement authorities are involved in the second investigation); *United States v. Lenfesty*, 923 F.2d 1293, 1297 (8th Cir. 1991), *overruled in part on other grounds*, 503 U.S. 540, 548-49 (1992) (all police officers involved in suspect's case have imputed knowledge that suspect has made request for counsel to any one officer, for purposes of *Edwards* rule invalidating police-prompted waivers of rights that are obtained after suspect requests counsel); *State v. Schuster*, 502 N.W.2d 565, 570 (S.D.) (confession obtained during interrogation by second officer, after defendant had exercised his right to counsel during initial interview with first officer, was inadmissible under *Edwards* and *Roberson* since waiver was not given knowingly or intelligently), *cert. denied*, 510 U.S. 968 (1993).

[45]*See Oregon v. Hass*, 420 U.S. 714, 722-23 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971).

his own behalf, then he assumes a reciprocal "obligation to speak truthfully and accurately,"[46] and may not "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage and provide himself with a shield against contradiction of his untruths."[47] It is only when the defendant's statements are involuntary that they must be excluded for all purposes.[48] If they are "the product of a rational intellect and free will,"[49] then they are admissible even when the defendant's request to speak with a lawyer before being questioned is not respected.[50]

Cases in which a defendant can make a colorable argument that self-incriminating statements were compelled – despite *Miranda* warnings and a waiver of

---

[46]*Harris*, 401 U.S. at 225.

[47]*Id.* at 224 (*quoting Walder v. United States*, 347 U.S. 62, 65 (1954)); *see also Hass*, 420 U.S. at 723 (applying the same rationale where suspect was advised of his rights and then asked for counsel but was questioned without his request being honored); *see also Oregon v. Elstad*, 470 U.S. 298, 307, 309 (1985) ("Despite the fact that patently *voluntary* statements taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination. . . . If errors are made by law enforcement officers in administering the prophylactic *Miranda* procedures, they should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself.").

[48]*See New Jersey v. Portash*, 440 U.S. 450, 459 (1979); *Mincey v. Arizona*, 437 US. 385, 389 (1978).

[49]*Mincey*, 437 U.S. at 398 (citations omitted).

[50]*See Hass*, 420 U.S. at 715-16, 722-24; *see also Michigan v. Harvey*, 494 U.S. 344, 352 (1990) (reaffirming *Hass*).

them – are rare.[51] "Absent evidence that [the defendant's will] was overborne and his capacity for self-determination critically impaired because of coercive police conduct," the statements he made will be considered voluntary.[52]

Based on the recording made of the interview and the evidence now of record, the Court concludes that the requisite coercive or overreaching conduct necessary to render Ziegler's statements is lacking. Several facts support this conclusion.

At the time of the interview, Ziegler was 31 years old, had completed the 11th grade, and could read, write, and understand the English language. He was advised of, and affirmed that he understood, his *Miranda* rights and waived them in writing. The interview lasted about 10 minutes and ended because he was too distraught to go on and had asked for a lawyer.

Significantly, at no time did Agent Richardson make any threats or promises to Ziegler. Nor did Richardson yell, swear, bully, or use any deceptive stratagems to get Ziegler to confess. The duration, tone and overall atmosphere of the interview were not hostile or intimidating. Ziegler spoke freely for about the first five minutes, providing information about the encounter and pointing out that he was "pretty drunk" at the time. He also minimized and tried to explain his conduct, saying that he only "flopped" Witt down to the ground when Witt grabbed his neck, and that he swung but

---

[51]*See Berkemer v. McCarty*, 468 U.S. 420, 433, n.20 (1984).

[52]*Colorado v. Spring*, 479 U.S. 564, 574 (1987).

15

never got a "full hit" on Witt. And Ziegler's most damning remark, "That's, I'm a murderer," was made spontaneously.

The asseverations Ziegler uttered were logical and understandable. Notably, while with Agent Richardson, Ziegler was not under the influence of alcohol. What's more, nothing Ziegler said or did indicated he was impaired to the extent that he did not know what he was doing or was suffering from some kind of mental or cognitive infirmity.

The record as a whole plainly shows that Ziegler's statements were voluntary. They were ones he wanted to make and were not the outcome of an environment and questioning that was so menacing it subdued his will and thwarted his decision making capacity.[53] This being the case, Ziegler's statements may be used at trial if and when he elects to testify in his own defense.[54]

---

[53]See United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005); see also Hass, 420 U.S. at 722-23 (holding that defendant's statements made after he requested an attorney and was later interrogated without one were voluntary for impeachment purposes where "the pressure on him was no greater than that on any person in like custody or inquiry by any investigating officer").

[54]See Krimmel v. Hopkins, 44 F.3d 704, 709 (8th Cir.), cert. denied, 516 U.S. 1015 (1995); United States v. Edenso, No. 3:15-CR-30076-RAL, 2015 WL 6108048 at **1-5 (D.S.D. Oct. 15, 2015), r & r adopted, 2015 WL 6821275 (D.S.D. Nov. 5, 2015); United States v. Buchanan, No. CR. 07-50118-AWB, 2008 WL 2330944 at **3, 23 (D.S.D. June 5, 2008), aff'd, 574 F.3d 554 (8th Cir. 2009); United States v. Smith, No. CR. 07-30097, 2008 WL 650450 at *6 (D.S.D. Feb. 15, 2008).

## CONCLUSION

After Ziegler invoked his right to counsel, Agent Richardson initiated a discussion which resulted in Ziegler making statements in violation of the bright-line rule set forth in *Edwards*. These statements are excludable as substantive trial evidence. But they may be utilized to impeach any testimony Ziegler may give in the event he takes the witness stand.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Ziegler's Motion to Suppress Statement,[55] be granted in part and denied in part for the reasons, and based on the authorities, discussed and cited to herein. The Motion should be granted insofar as it seeks to exclude, as substantive – but not impeachment – evidence, the custodial statements Ziegler made to Agent Richardson on May 24. In all other respects, the Motion should be denied.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[56] Unless an extension of time for cause is later obtained,[57] failure to file timely objections will result in the waiver of the

---

[55] *See* Dkt. No. 37.

[56] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[57] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665,

(continued...)

17

right to appeal questions of fact.[58] Objections must "identify[] those issues on which further review is desired[.]"[59]

DATED this 29th day of November, 2017, at Pierre, South Dakota.

BY THE COURT:

*signature*

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[58]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[59]*Arn*, 474 U.S. at 155.

18